**TOLEDO EDISON COMPANY and Cleveland Electric Illuminating Company, Plaintiffs–Appellants,**

v.

**G A TECHNOLOGIES, INC., TORREY PINES TECHNOLOGY DIVISION, Defendant–Appellee.**

No. 87–3840.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 4, 1988.

Decided May 26, 1988.

Thomas S. Zaremba, Mary Ann Whipple, Sue A. Sikkema (argued), Fuller & Henry, Toledo, Ohio, for plaintiffs-appellants.

Charles E. Ide, Jr., Secor, Ide & Callahan, Toledo, Ohio, H. Roderic Heard, Edward T. Butt, Jr., (argued), Dane B. Jaques, Mathew A. Hurd, Wildman, Harrold, Allen & Dixon, Chicago, Ill., David Dantzler, Jr., Hicks, Maloof & Campbell, Atlanta, Ga., for defendant-appellee.

Before JONES and MILBURN, Circuit Judges; and JOINER, Senior District Judge.*

---

* Honorable Charles W. Joiner, Senior District Judge, United States District Court, Eastern District of Michigan, sitting by designation.

JOINER, Senior District Judge.

Toledo Edison Company and Cleveland Electric Illuminating Company (Edison) operate the Davis–Besse Nuclear Power Station in Ottawa County, Ohio, and bring this breach of contract and negligence action against G A Technologies, Inc., Torrey Pines Division (Torrey Pines), as a result of an incident at Davis–Besse on June 9, 1985. During discovery, Torrey Pines served a subpoena *duces tecum* on a third party for the production of documents related to the incident. Edison filed a motion to quash that subpoena and for a protective order based on the allegation that some of the documents were protected "work product" under Fed.R.Civ.P. 26(b). The district court denied this motion, and Edison now appeals from this determination.

## I.

The issue in this case involves the appropriate standards and procedures to be used by the district court in making determinations of claims that discovery should not be had of documents claimed to have been prepared in anticipation of litigation or for trial, commonly referred to as "work product."

In 1981, Edison contracted with Torrey Pines to determine the underlying cause of motor-operated valve problems at Davis–Besse, and to develop proper switch settings for these valves. On June 9, 1985, two motor-operated valves in the auxiliary feedwater system failed to open upon operator command. This failure isolated the reactor from all auxiliary feedwater, and contributed to an "event" at Davis–Besse. Because of this event, Davis–Besse ceased operation from June of 1985 until January 1987, at a total cost of approximately $70 million. Edison filed the instant suit on June 20, 1986, alleging that the valves that failed in June of 1985 had been improperly set by Torrey Pines and that the acts of Torrey Pines proximately caused the cost of $70 million.

On June 5, 1987, Torrey Pines served a subpoena *duces tecum* on Movats Incorporated (Movats), located in Marietta, Georgia. Movats is a Georgia corporation specializing in testing and analyzing motor-operated valves, and was retained by Edison in three different capacities. First, starting on June 18, 1985, Edison retained Movats to test the motor-operated valves at the power plant subsequent to the June 9, 1985, incident at Davis–Besse. Second, Movats was retained as a consultant in the late summer of 1986, in proceedings before the Public Utilities Commission of Ohio (PUCO), and provided expert testimony on Edison's behalf in those proceedings.[1] At issue before the PUCO was whether Edison was sufficiently diligent in its operation of Davis–Besse. After concluding that Edison was not sufficiently diligent, the PUCO held that Edison's shareholders, rather than its rate payers, should bear the added cost of electricity while the plant was inoperative. Finally, Movats was retained on approximately March 12, 1986, to consult with Edison concerning any claims or potential claims that might arise or be filed as a result of the Davis–Besse incident, including the instant claim.[2]

Edison notified Torrey Pines of its objections to the subpoena, and it was agreed that the dispute would be resolved in the Northern District of Ohio. By telephone conference on July 2, 1987, the parties agreed that Movats would transfer the requested documents to its counsel in Atlanta, Georgia, that Edison would review the documents and identify which documents it claimed as work product, and that the documents so identified would not be produced pending the resolution of Edison's motion to quash or for protective order which had been filed on June 15, 1987. After inspecting the documents, which represented four boxes, Edison determined that two of the four boxes contained test reports and

---

1. The PUCO proceedings were public, Torrey Pines attended these proceedings, and Torrey Pines has access to all of the documents formally filed in this proceeding.

2. As to this final capacity, it has not yet been decided whether Edison will have Movats testify as an expert in the instant case, and pursuant to the applicable scheduling order, Edison has until later this year to make this decision.

analyses of the valves at Davis–Besse. Edison did not object to the production of these documents. Of the remaining two boxes, which contained some 6,948 numbered documents, Edison objected to the production of 1,590 documents.

On July 7, 1987, the district court issued its first order denying Edison's motion to quash. The district court stated that in order for Edison to prevail, it must demonstrate that the documents were prepared for or at the request of a party or their representative, that the documents were prepared in anticipation of litigation or for trial, and that the documents contained matters related to "mental impressions, conclusions, opinions, or legal theories." The court held that Edison had failed to establish these requirements. However, on July 10, 1987, the district court granted Edison's motion for reconsideration and va-

cated its previous order, giving Edison ten days to provide the following further information as to its Rule 26(b) claim: first, the identity of the specific documents which are alleged to contain its work product; second, a brief explanation as to the basis upon which it contends that the documents in question contain work product.

Pursuant to the district court's instructions, Edison filed what was labeled as a reply brief in support of its motion to quash, which contained several affidavits, including that of Arthur Charbonneau, the president of Movats, all of which stated that the documents in question were prepared, obtained, or received by Movats in anticipation of Edison's participation in the PUCO proceedings or the instant case.[3] In addition, Edison submitted an Exhibit E to its reply brief, which provided more specif-

3. More specifically, Charbonneau's affidavit states as follows:

1. I am President of MOVATS, Incorporated ("Movats").

2. Movats performed testing on the motor-operated valves at Davis–Besse following its June 9, 1985 event. Documentation of that testing is maintained separately from any other documentation of any kind in the possession of Movats and consists of two (2) file boxes which are presently located at Movats' place of business.

3. In addition to testing motor-operated valves at Davis–Besse following the June 9, 1985 event, Movats was retained on behalf of The Toledo Edison Company ("Toledo Edison") and The Cleveland Electric Illuminating Company ("CEI"): (1) as a consultant and to provide a testifying expert witness respecting a hearing or trial ("PUCO Proceedings") conducted before the Public Utilities Commission of Ohio and (2) as a consultant respecting litigation instituted against G A Technologies, Inc., Torrey Pines Technology Division ("Litigation").

4. During the course of Movats' relationship as a consultant respecting the PUCO Proceedings and the Litigation, I met extensively to consult with and advise the lawyers representing Toledo Edison and CEI in preparation for those proceedings. Documents relating to the consultation and advice requested by Toledo Edison, CEI and its lawyers and provided by Movats to Toledo Edison, CEI and the lawyers representing them in anticipation of and preparation for the PUCO Proceedings and the Litigation were kept separately from the test documents described in paragraph 1 above but were not kept separately from any

other non-test documents in the possession of Movats relating to the Davis–Besse Nuclear Power Station. The non-test documents fill approximately two (2) more file boxes and are in the possession of Movats' lawyers, Hicks, Maloof and Campbell, in Atlanta, Georgia.

5. A variety of different documents were generated by, at the request of, or in connection with the requests of Toledo Edison, CEI and its lawyers in anticipation of and in preparation for the PUCO Proceedings and the Litigation and are presently in the possession of Movats' lawyers in the two (2) file boxes identified in paragraph 4 above.

6. Specifically, and among others, the types of documents described in paragraph 5 above include letters, memoranda, meeting minutes, hand and typewritten notes and other materials either (a) provided to Movats by the lawyers and requesting, in a variety of forms, advice concerning the preparation of their cases or (b) prepared by Movats analyzing and responding to the lawyers concerning their requests for such advice.

7. The test documents described in paragraph 2 above are contained in two (2) discrete file boxes. The remaining Davis–Besse documents, however, were not segregated by me or by anyone else on behalf of Movats and, consequently, the documents described in paragraphs 5 and 6 above are included and interspersed among the two (2) file boxes of non-test documents described in paragraph 4 above. I have been informed by my counsel that the non-test documents described in paragraph 4 above have been bates-stamped and consist of approximately 6,900 numbered pages.

Affidavit of Arthur G. Charbonneau, July 16, 1987.

ic descriptions of the documents in question, these descriptions lending further support to Edison's contention that the documents were prepared in anticipation of litigation. At no point did Torrey Pines present any affidavits or other evidence that contradicted Edison's assertion that these documents were prepared in anticipation of litigation.

On August 25, 1987, the district court again denied Edison's motion. It repeated the three requirements Edison must satisfy from the court's July 7 order, and concluded that Edison had failed to provide sufficiently detailed information to permit it to resolve Edison's claim. Specifically, the district court stated that Edison had failed to indicate the names and positions of the authors of the specific documents, failed to specify the dates of preparation of each document, and failed to indicate who received each document, as well as to whom the documents were subsequently disclosed, i.e., third parties. On August 28, 1987, Edison filed a motion to alter/amend judgment, requesting that it be given the opportunity to provide the information the district court found lacking, or in the alternative, that the court conduct an *in camera* inspection of the documents themselves.[4] The district court denied this motion on August 31, 1987, but on September 4, 1987, the district court stayed the enforcement and execution of the subpoena pending the outcome of the instant appeal.

Because we are convinced that the district court did not make the proper analysis required by a claim of work product, as a result of which conclusions were reached that were contrary to the record in the case, it is necessary to reverse the orders denying Edison's claims for protection.

## II.

The law relating to work product began with *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). However, since 1970, all of the standards and procedures for making claims of work product are embraced in Fed.R.Civ.P. 26(b)(3) (entitled "Trial Preparation: Materials")[5] and (4) (entitled "Trial Preparation: Experts"),[6]

---

4. At oral argument, Edison claimed that it had not received the documents in question from Movats' attorneys in Georgia until after the district court's August 25 order, therefore this was its first opportunity to suggest an *in camera* inspection of the documents by the district court.

5. Fed.R.Civ.P. 26(b)(3) provides in pertinent part:

(3) **Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

6. Fed.R.Civ.P. 26(b)(4) states as follows:

(4) **Trial Preparation: Experts.** Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

(B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

(C) Unless manifest injustice would result, (i) the court shall require that the party seek-

under both of which Edison claims it is entitled to protection. No longer is the generic term "work product" useful in light of the specific requirements of Rule 26(b)(3) and (4) dealing with the subject of trial preparation. It is under these specific requirements that Edison claims it is entitled to protection.

■ Rule 26(b)(3) is very specific and direct in its application and requires the district judge to take specific sequential steps when a claim is made that material should be protected because of trial preparation. These steps should be taken against the admonition of Justice Murphy in *Hickman:*

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of

legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman*, 329 U.S. at 510–11, 67 S.Ct. at 393–94.

When a claim that materials have been "prepared in anticipation of litigation or for trial" is made, the court must go through the sequential steps set out in Fed.R.Civ.P. 26(b)(3) as follows:

1. The party requesting discovery must first show that, as defined in Rule 26(b)(1), the materials requested are "relevant to the subject matter involved in the pending litigation" and not privileged. Because the application of subdivision (b)(3) is limited to "documents and tangible things otherwise discoverable under subdivision (b)(1)," the burden of making this showing rests on the party requesting the information. In this case it is Torrey Pines.

2. If the party requesting discovery meets this burden and the court finds that the claimed material is relevant and not privileged, the burden shifts to the objecting party to show that the material was "prepared in anticipation of litigation or for trial" by or for that party or that party's representative, including that party's attorney, consultant, surety, indemnitor, insurer or agent. This showing can be made in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories. This showing can be opposed or controverted in the same manner. The determination of this matter is the second sequential determination that must be made by the court.

3. If the objecting party meets its burden as indicated above and the court finds that the material was prepared in anticipation of litigation or for trial by one of the

ing discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) of this rule; and (ii) with respect to discovery obtained under subdivision (b)(4)(A)(ii) of this rule the court may require, and with respect to discovery obtained under subdivi-

sion (b)(4)(B) of this rule the court shall require, the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

persons named in the rule, the burden shifts back to the requesting party to show that the requesting party (a) has substantial need of the materials in preparation of the party's case, and (b) that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In doing this, attention is directed at alternative means of acquiring the information that are less intrusive to the lawyer's work and whether or not the information might have been furnished in other ways.

4. After the application of the shifting burdens, even if the court determines that the requesting party has substantial need of the materials in the preparation of its case and that the requesting party is not able, without undue hardship, to obtain the substantial equivalent of the materials by other means, the rule flatly states that the court is not to permit discovery of "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation." On this issue, the burden of showing that the nature of the materials are mental impressions, conclusions, opinions or legal theories of an attorney or representative, rests on the objecting party. The term "representative of the party" embraces the same persons as did the term "party's representative" set out earlier in the rule including "... consultants ... agent...."

5. The court may not order discovery of materials if discovery of such materials would violate Rule 26(b)(4) involving trial preparation, i.e., experts. Different standards and procedures are set forth because of the nature of experts and the different purposes for which they are employed. Experts are used by parties for different purposes just as information is prepared or acquired by parties for different purposes. Experts may be used to assist in the operation of a machine or a procedure or to repair or improve it, or they may be employed to assist in preparation for trial or to give testimony at the trial. Rule 26(b)(4) specifically and exclusively deals with the standards and methods of discovery of facts known and opinions held by experts acquired or developed in anticipation of liti-

gation or for trial. Subdivision (b)(4) does not apply to facts known or opinions held by experts not acquired or developed in anticipation of litigation or for trial. If it is shown that the facts or opinions of the expert were so acquired the standards and procedures of subdivision (b)(4) apply. Because material covered by subdivision (b)(3) and (b)(4) often overlap, it may be necessary for the court to continue with the (b)(4) analysis.

The different roles of experts and the procedures to be followed in making discovery from them are described in the Advisory Committee Notes to the 1970 Amendment to Rule 26(b)(4) as follows:

Subdivision (b)(4)(A) provides for discovery of an expert who is to testify at the trial. A party can require one who intends to use the expert to state the substance of the testimony that the expert is expected to give. The court may order further discovery, and it has ample power to regulate its timing and scope and to prevent abuse. Ordinarily, the order for further discovery shall compensate the expert for his time, and may compensate the party who intends to use the expert for past expenses reasonably incurred in obtaining facts or opinions from the expert. Those provisions are likely to discourage abusive practices.

Subdivision (b)(4)(B) deals with an expert who has been retained or specially employed by the party in anticipation of litigation or preparation for trial (thus excluding an expert who is simply a general employee of the party not specially employed on the case), but who is not expected to be called as a witness. Under its provisions, a party may discover facts known or opinions held by such an expert only on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Subdivision (b)(4)(B) is concerned only with experts retained or specially consulted in relation to trial preparation. Thus the subdivision precludes discovery against experts who were informally con-

sulted in preparation for trial, but not retained or specially employed. As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed, but not those informally consulted.

These new provisions of subdivision (b)(4) repudiate the few decisions that have held an expert's information privileged simply because of his status as an expert, *e.g.*, *American Oil Co. v. Pennsylvania Petroleum Products Co.*, 23 F.R.D. 680, 685–686 (D.R.I.1959). See Louisell, Modern California Discovery 315–316 (1963). They also reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine. See *United States v. McKay*, 372 F.2d 174, 176–177 (5th Cir.1967). The provisions adopt a form of the more recently developed doctrine of "unfairness". See *e.g.*, *United States v. 23.76 Acres of Land*, 32 F.R.D. 593, 597 (D.Md.1963); Louisell, *supra*, at 317–318; 4 Moore's Federal Practice ¶ 26.24 (2d ed. 1966).

Thus, if it is contended that the material requested is developed by an expert (1) who has been retained or specially employed in anticipation of litigation or for trial (on this issue the objector has the burden), and (2) who is not expected to be called as a witness, then before discovery can be ordered, it is essential that the court find the exceptional circumstances described in Rule 26(b)(4)(B).

### III.

The limits of discovery and the protection of parties and witnesses against excessive discovery rests in the broad discretion of the judge. This discretion is abused, however, if it becomes clear that the judge has applied an improper standard, or has failed to follow the established legal rules or has based the decision on a record devoid of facts to support that decision. *Chrysler Corporation v. Fedders Corporation*, 643 F.2d 1229, 1240 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981).

In this case the orders entered by the district court were not responsive to the requirements of Rule 26(b)(3), resulting in a decision having no support in the record. The lower court did not follow the sequential steps called for by the rule. In fact, the court seems to have ignored or held without effect direct evidence pertaining to the purpose of the documents which, if properly credited, would have resulted in the issuance of a protective order.

In explanation, the court also held that the statements in the affidavits were not sufficient to "provide the precise information necessary to make an informed decision on plaintiff's claim that the documents contain its work product." This is in error. The undisputed affidavit of Arthur Charbonneau is specific and detailed to indicate that the documents were prepared in anticipation of litigation or for trial. That is the only burden the plaintiff-objector has. It is not required in making *prima facie* case that the authors of the documents, their positions, or their responsibilities in connection with the litigation be spelled out, nor is it required in the ordinary case that the dates of preparation of the documents be stated, nor does the objector have the burden of affirmatively showing to whom the documents were disclosed in order to make a *prima facie* case. When, however, as is alleged in this case, the consultant or expert also may have acted in another and different capacity, as for example, a repairer, and thus may be an ordinary witness as well as an expert witness, the date of the documents may become relevant as bearing on the capacity of the witness as a witness who acquired information or developed opinions in anticipation of litigation or for trial.

It may or may not be necessary for the court to examine the documents in question. It is not the desire of this court to burden the district court unduly, but the rule requires that it is the court that must "protect against disclosure of mental impressions, conclusions, opinions on legal theories of an attorney or their representative." There is no such requirement in making the determination of whether or

not the material is prepared in anticipation for litigation or for trial, or if there is a need or there is an alternative means of obtaining material. Normally these matters can be resolved by the application of the rules of burden of proof.

The above discussion illustrates that the district court applied an erroneous legal standard in its Rule 26 analysis, and as such, this constitutes an abuse of discretion which requires that this court REVERSE the district court's denial of the motion to quash. Accordingly, this case is RE-MANDED to the trial court for further proceedings not inconsistent with this opinion. The court should permit additional record to be made on the matter set out herein, complying with the procedures called for by Rule 26(b)(3) and (4) as outlined above.