**John ESCHENBERG, Plaintiff,**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, f/k/a International Harvester Corporation, Defendant.**

**Civ. A. No. 90–CV–40303–FL.**

United States District Court,
E.D. Michigan, S.D.
at Flint.

April 29, 1992.

Jeffrey T. Stewart, Karbel, Brukoff, Rothstein, Stewart & Wallace, P.C., Southfield, Mich., for plaintiff.

Craig L. John, Joseph H. Hickey, Dykema Gossett, Bloomfield Hills, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is the plaintiff's Motion in Limine which seeks to prevent "the defendant from utilizing or even making reference to plaintiff's counsel's deposition in any manner in front of the jury." Brief in Support of Plaintiff's Motion in Limine, at 3–4. For the reasons which follow, the motion is GRANTED.

### I.

In October, 1989, the plaintiff's uncle, Randall Eschenberg, was cleaning excess grain from the grain tank and vertical unloading auger of a combine designed and manufactured by the defendant, Navistar International (Navistar), and owned by Eschenberg Farms. While the combine's engine was running, the plaintiff, John Eschenberg, approached the combine, squeezed into the area between the left front tire and the body of the combine, and, without telling his uncle, reached up approximately seven feet into the open access door at the base of the vertical unloading auger to remove wet corn that had accumulated there. Randall Eschenberg jumped down from the platform where he had been "blowing out" excess corn, and returned to the combine's control cab. John Eschenberg's hand was still inside the auger when his uncle engaged the auger mechanism. The plaintiff's hand was totally severed at the wrist. The hand was reattached, but the plaintiff has regained little use of the hand. The plaintiff asserts breach of implied warranty and negligent design.

The present motion arises out of the participation of plaintiff's counsel, Jeffrey Stewart, in the creation of alternative access to the auger. The plaintiff's expert had already opined that the access door to the auger should be interlocked with the combine's fuel injection solenoid in such a way that when the access door was opened, the engine would stop. In addition, one of Navistar's competitors manufactures a combine that has a smaller door which prevents an entire human hand from getting into the auger. Although both designs may have prevented the plaintiff's injuries, the defendant maintains that neither alternative is compatible with the International Harvester's vertical unloading auger design, and in deposition testimony, Navistar's expert expressed such an opinion.

It was Mr. Stewart's belief "that the best way to refute that testimony would be, not to have a witness get up and simply disagree with him, but to see if we could create an example of how a limited access door might work and show it to the trier of fact." Stewart Deposition, at 8. During discussions with plaintiff's expert, Mr. Stewart conceived of combining the competitor's smaller door design with the interlock concept conceived by plaintiff's expert to create an interlocked auger access system with two doors. A smaller door permits grain to be cleared mechanically from

the auger, but prevents the insertion of a hand into the auger. When the second and larger door is opened, a hand can be inserted into the auger to clear accumulated grain manually, but the combine's engine is not running and the auger cannot seize the inserted hand. With the help of Randall Eschenberg and others, Mr. Stewart constructed a prototype utilizing these features.

As stated above, the interlocked, double door creation was originally conceived as a demonstrative exhibit that would be used to refute the testimony of Navistar's expert that the smaller door designed and manufactured by Navistar's competitor was incompatible with the design of defendant's product. After limited testing of the new creation, Mr. Stewart determined that he would like to offer the modifications as a design alternative to the defendant's design which permitted the occurrence resulting in the plaintiff's injury.

After learning of Mr. Stewart's intentions, Navistar sought discovery regarding the new creation, including the deposition of the purported creator, Mr. Stewart. Mr. Stewart answered some of the questions posed by the defendant, including questions of the individuals responsible for creating and implementing the construction of the prototype, the operation of the combine with the modifications, and the existence of blue prints or plans. The plaintiff objected, however, to having his deposition taken, and filed a motion for protective order, which brought the entire matter to the Court's attention.

## II.

At issue in the motion for protective order, as well as the present motion, is the amount of access a defendant in a products liability case should have to information and testimony from the creator or "designer"[1] of a proposed alternative design when the creator is the plaintiff's attorney. Although originally conceived to play a limited role as a demonstrative exhibit, the plaintiff's creation took on a life of its own as a proposed alternative design that was available at the time of design of the combine that injured the plaintiff, and that could have prevented that injury.

Mr. Stewart argues that he did what any good attorney does for his client. He thought about the evidentiary difficulties of his case, and conceived of a way to address a perceived weakness. Mr. Stewart put two ideas together to create an alternative design that would have prevented his client's injury and arguably would be compatible with the rest of Navistar's design of its combine. Because it was his idea, Mr. Stewart also supervised the construction of a prototype. Now, Mr. Stewart is concerned about the chilling effect that the taking of his deposition and the use of the deposition testimony at trial might have on attorneys' participation in the preparation of their clients' cases for trial.

The defendant argues that disposition of this issue is controlled by the extensive sequential analysis supplied by the Sixth Circuit in *Toledo Edison Co. v. G A Technologies, Inc.*, 847 F.2d 335 (6th Cir.1988) to be applied in work product cases.[2] The

---

**1.** During the hearing on the motion in limine, there was substantial debate regarding the appropriateness of calling Mr. Stewart a "designer." The plaintiff argued that Mr. Stewart merely created a demonstrative exhibit, and should not be considered a designer subject to discovery. In its briefs in opposition to the motions in limine and for protective order, and at the hearing, the defendant maintained that Mr. Stewart was the designer of a proposed alternative design and sought the discovery to which it felt it would be entitled from any other designer of a proposed alternative design. The characterization of Mr. Stewart's role in the development of the prototype of the interlocked, dou-

ble-door design is immaterial, given the conclusions reached in this Opinion.

**2.** When a claim that materials have been "prepared in anticipation of litigation or for trial" is made, the court must go through the sequential steps set out in Fed.R.Civ.P. 26(b)(3) as follows:

1. The party requesting discovery must first show that, as defined in Rule 26(b)(1), the materials requested are "relevant to the subject matter involved in the pending litigation" and not privileged. Because the application of (b)(3) is limited to "documents and tangible things otherwise discoverable under subdivision (b)(1)," the burden of making this

extent of counsel's involvement with the development of the materials which the defendant now seeks to discover, however, distinguishes this case from the average work product case. *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.1986) considers more precisely the issue under consideration in the case at bar, that being the circumstances under which trial counsel should be required to give deposition testimony.

> We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton*, 805 F.2d at 1327 (citations omitted). The standards in *Shelton* and *Toledo Edison* are similar in that they consider the relevance and the availability of other means to discover the information sought. The *Shelton* standard does not consider the hardship involved in obtaining the information, and requires the party seeking the attorney's deposition to show the information sought is crucial to case preparation. *Toledo Edison* merely requires a showing of substantial need.

Because *Toledo Edison* does not consider the efficacy of taking attorneys' depositions, it is distinguishable from the case at bar. *Shelton* persuasively articulates the valid policy considerations that require the parties' attorneys to be shielded from discovery, and alters the standard accordingly to grant greater protection. It provides the appropriate standard in a case such as this where one party to litigation seeks to take the deposition of opposing counsel.

After studying the parties' briefs, hearing oral argument and reviewing the transcript from Mr. Stewart's deposition, it is clear that the deposition of the plaintiff's attorney should never have been allowed, that the transcript of the deposition can not be permitted to be used at trial, and, that defendant can not call Mr. Stewart at trial. Navistar could not, and cannot meet, the three requirements in *Shelton*. Although I have determined that *Toledo Edison* is distinguishable from this case, it is clear that Navistar could not and cannot satisfy the sequential procedure furnished in *Toledo Edison*.

### III.

#### A.

The relevancy of the information which the defendant seeks through discovery, and anticipates offering as evidence at trial, must be considered in light of the evidentiary requirements imposed on proposed alternative designs in product liability cases. In *Owens v. Allis–Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372 (1982), the Mich-

---

showing rests on the party requesting the information. * * *

2. If the party requesting discovery meets this burden and the court finds that the claimed material is relevant and not privileged, the burden shifts to the objecting party to show that the material was "prepared in anticipation of litigation or for trial" by or for that party or that party's representative, including that party's attorney, consultant, surety, indemnitor, insurer or agent. This showing can be made in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories. This showing can be opposed or controverted in the same manner. The determination of this matter is the second sequential determination that must be made by the court.

3. If the objecting party meets its burden as indicated above and the court finds that the material was prepared in anticipation of litigation or for trial by one of the persons named in the rule, the burden shifts back to the requesting party to show that the requesting party (a) has substantial need of the materials in preparation of the party's case, and (b) that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In doing this, attention is directed at alternative means of acquiring the information that are less intrusive to the lawyer's work and whether or not the information might have been furnished in other ways.

*Toledo Edison*, 847 F.2d at 339–40. The court's sequential procedure continues, but the additional sequences are even less relevant to the task at hand.

igan Supreme Court held that the plaintiff in proposing a design alternative, had failed to create an issue of fact regarding the reasonableness of the risk created by the product at issue in that case. The plaintiff had failed to demonstrate that the proposed alternative design was available and reasonable. Considerations of reasonableness include evaluations of the utility, marketability and general safety of the proposed alternative. *Id.* at 429–32, 326 N.W.2d 372. Thus, the defendant wants to be able to demonstrate that the plaintiff's proposed alternative creation is not useful, marketable or safe. To be relevant, then, the information sought by the defendant must relate to the utility, marketability and safety of the plaintiff's interlocked, double-door creation.

Navistar sought Mr. Stewart's deposition to explore the designer's engineering education, training and experience, the design considerations, performance parameters and testing protocol used by the designer, the designer's consideration of the reasonableness, utility and safety of the design, and the other design alternatives evaluated and rejected by the designer. Defendant's Brief in Opposition to Motion for Protective Order, at 18–19. Additional areas of inquiry were identified when the plaintiff sought to exclude the deposition testimony, and any mention of the deposition or Mr. Stewart's participation in the creation.[3]

Navistar feels that all of these inquiries are relevant given the standard to be applied to proposed alternative designs in product liability cases. What the defen-dant basically seeks from discovery of these issues is the extent to which the creator of the proposed alternative design considered certain factors. Assuming that utility, marketability and safety are the critical factors in evaluating a proposed design alternative, the focus should be on the creation's ability to meet these criteria, however, and *not* upon the creator's failure to consider them.

The defendant cannot show that it is relevant whether the creator of the alternative design considered these factors. Nor is there any relevance to the creator's education, training or experience in engineering, the conditions of the testing performed by the creator on the proposed alternative design, the creator's knowledge of the types of grain that can be powered out of the reduced-size door opening, the time needed to clean the auger, or the impact on the operations of certified seed farmers. Mr. Stewart's education, testing, or knowledge of the utilitarian requirements of a combine have no relevance to the actual utility, marketability and safety of the proposed alternative.[4]

Navistar is not precluded from using its own expert to demonstrate how the plaintiff's offered creation is inefficient, useless or unsafe. Additionally, in order to introduce the alternative creation as a design alternative rather than a demonstrative cross examination device, the plaintiff will have to use a witness as a proponent. That proponent, no doubt, will opine that the alternative creation is efficient, useful and

---

3. The defendant's brief listed these additional areas of inquiry:

—Whether the interlocked door within a door prototype would make a farmer's use of the combine easier. ...

—Negative aspects of the interlocked door within a door design. ...

—Why the mechanical (as opposed to electrical) interlocks did not constitute reasonable alternative designs. ...

—Safety flaws in the rejected mechanical interlocks. ...

—Whether the two-slotted door within a door design was preferable to the one-slotted design. ...

—That one of the reasons for the two-slotted design was to power out "gunky material" that had accumulated at the bottom of the vertical unloading auger. ...

—How an operator is supposed to use the interlocked door within a door design to clean out the vertical unloading auger. ...

—Further steps which would allegedly further reduce the possibility of a failure of the electronic interlock system. ...

—How the slotted doors could be further enhanced to reduce injury. ...

—Under what conditions the interlocked door within a door would not "fail safe". ...

Defendant's Brief in Opposition to Motion in Limine, at 16.

4. Although they certainly would be relevant if Mr. Stewart sought to testify on those subjects. Mr. Stewart does not, of course, seek to do so.

safe. The proponent's evaluation or lack thereof of crucial criteria is relevant to the reliability of the proponent's opinion. The *creator's* failure to consider these factors, however, is irrelevant to the ultimate issue surrounding the proposed alternative creation so long as the creator is not the trial proponent.

If the information sought is not relevant to the case, Navistar cannot demonstrate that it is crucial or substantially necessary to its preparation for trial. The information that the defendant really seeks can be obtained from the proponent of the creation, that is, the plaintiff's expert. It can also be gone into with defendant's expert. Thus, the defendant has failed to meet the *Shelton* standard by demonstrating that the information sought is relevant, crucial to trial preparation, and unavailable by other means. A demonstration that the information is relevant is the first requirement of the sequential analysis provided in *Toledo Edison*. Because Navistar has failed to meet this first step, it would be unnecessary for the Court to pursue the balance of the sequential steps, if the Court were applying the *Toledo Edison* standard.

### B.

The defendant argues that the creator of the proposed alternative design in this case should not be treated any differently from other designers, when it comes to discovery and trial testimony, merely because plaintiff's counsel played such an extensive role in that creation.

> The following analogy will hopefully demonstrate Navistar's point. Assume, as is ordinarily the case, that Mr. Stewart played no role in the design of Plaintiff's various prototypes. Further assume, as is ordinarily the case, that Plaintiff had retained an agricultural engineer to design a "reasonable" alternative. Under this scenario no one would, could or, in the past, has ever seriously questioned Navistar's right to fully question the engineer about the issues set forth above. Moreover, no one could or ever has argued against Navistar's right to present and/or cross examine this information at trial. Plaintiff has still not presented any reason why this case should be any different other than to claim that this sort of information should be protected from discovery simply because Mr. Stewart has injected himself into the process.

Defendant's Brief in Opposition to Motion in Limine, at 17.

Mr. Stewart, however, is not receiving different treatment. As discussed above, the proper discovery and evidentiary focus should be on the utility, marketability and safety of the creation itself, and not upon the creator's evaluation of the creation's utility, marketability and safety. This is particularly true when the creator will not be the proponent of his creation before the jury. Here, the creator is not the proponent of his creation's utility, marketability and safety. Therefore, even if the plaintiff had retained an agricultural engineer who designed and constructed the plaintiff's prototype, I believe that, unless the defendant could demonstrate exceptional circumstances and impracticability of obtaining the information elsewhere, Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure would preclude discovery of that expert if the plaintiff decided not to call the expert as a witness at trial. The defendant could obtain any relevant information from the expert used by the plaintiff as a proponent of the design, or from its own experts' testing and evaluation of the design. *See United States v. Hooker Chemicals & Plastics Corp.*, 112 F.R.D. 333, 338 (W.D.N.Y.1986) (because defendant's expert was retained in anticipation of litigation, government was precluded by Rule 26(b)(4)(B) from deposing expert who had formed opinions supportive of the government's position, but who was not to be called as a witness at trial).[5]

The discussion, above, of the relevancy of the information sought, reveals that

---

5. Here, it is important to distinguish the treatment of the designer of the combine on which the injury occurred. The extent of the designer's consideration of the utility, marketability and safety of the instrument of injury is a fact relevant to issues of negligent design.

Navistar can not claim prejudice from the denial of discovery and the exclusion of this evidence. The defendant argues that the jury would be interested in knowing of Mr. Stewart's role in creating the interlocked, double-door, and that the participation of a non-engineer attorney would somehow discredit the creation itself. Mr. Stewart's participation has nothing to do with the alternative design's actual utility, marketability or safety. Evidence of his participation is not relevant and therefore not admissible. Exclusion of that evidence cannot be prejudicial to the defendant.

### C.

In addition, information regarding Mr. Stewart's creating and testing methods are not discoverable. The Court permitted Navistar to take Mr. Stewart's deposition in the mistaken belief that it needed the deposition testimony to determine the relevancy of the information sought. Because the proper focus for evaluating a plaintiff's proposed alternative designs is on the utility, marketability and safety of the design, and not the designer's consideration and evaluation of these factors, it should have been clear at the time the Court denied the plaintiff's motion for protective order and permitted the deposition of Mr. Stewart that the information sought was irrelevant and not discoverable. The deposition of plaintiff's counsel should never have been permitted.

### IV.

This case does not involve an attorney's knowledge of facts, presently in issue in litigation, but obtained by the attorney prior to any anticipation of litigation. Thus, many of the cases cited by the defendant are inapplicable to the issue before the Court. *Hay & Forage Ind. v. Ford New Holland, Inc.*, 132 F.R.D. 687 (D.Kan.1990) involved the deposition of the attorney who, long before litigation was initiated, was integrally involved in the development of the patent that became the focus of subsequent litigation. In *Conkling v. Turner*, 883 F.2d 431 (5th Cir.1989), the date of the attorney's discovery of the ex-

istence of a cause of action was crucial to determining when the limitations period on the claim would start to run and expire. *Cooper v. Welch Foods, Inc.*, 105 F.R.D. 4 (W.D.N.Y.1984) was a patent infringement action in which the plaintiff sought the deposition of corporate counsel who was not involved in trial preparation. As the plaintiff correctly points out, "The key feature of all these cases was that the lawyers [sic] involvement *before suit was started* is what made them witnesses in the case." Plaintiff's Reply Brief in Support of Motion for Protective Order, at 3.

The issue in this case, then, is quite different from *Hay & Forage Industries, Conkling* and *Cooper*. In the case at bar, the attorney was involved intimately in the design and production of a prototype, in preparation for trial of a products liability claim, of a proposed alternative design. Here, it is held that the defendant in a products liability case cannot depose, or use at trial the transcript of the deposition of, the creator of a proposed alternative design when the creator is the plaintiff's trial counsel and that counsel will not be a trial witness in support of his creation on the subjects of utility, marketability ad safety. Therefore, the plaintiff's Motion Limine is GRANTED.

SO ORDERED.