19 F.3d 1432
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ARKWRIGHT MUTUAL INSURANCE COMPANY, Plaintiff,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,
Defendant-Appellee,
Murray Sheet Metal Company, Inc.; UBA Fire & Explosion
Investigators, Parties in Interest-Appellants.
 No. 93-3084.
 United States Court of Appeals, Sixth Circuit.
 Feb. 25, 1994.
 
 Before: GUY and SILER, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Murray Sheet Metal Company, Inc., appeals the district court's order that partially granted defendant National Union Fire Insurance Company's motion to compel production of certain documents held by UBA Fire & Explosion Investigators. Murray asserts the documents in question are protected by work product immunity and attorney-client privilege. With one exception, we affirm.
 
 I.
 
 2
 A fire broke out at the General Electric Company ("GE") plastics facility in Washington, West Virginia, on April 4, 1990. Murray employees were performing welding work at the GE facility when the fire started. Murray recognized the possibility of future involvement in litigation concerning the fire and immediately began an in-house investigation of its cause. On April 5, 1990, Murray reported the fire to its liability insurer, the Erie Insurance Company. Erie hired UBA Fire & Explosion Investigators and Gay & Taylor, Inc., to investigate the fire. UBA first examined the fire scene on April 6, 1990, when UBA investigator Mike Kendrick was granted access to the GE facility. Cleanup activities that altered the fire scene began during or shortly after the time of Kendrick's April 6 visit. On April 18, 1990, Erie hired the law firm of Steptoe & Johnson to represent Murray. Steptoe immediately began to supervise UBA's investigation of the fire.
 
 
 3
 Fire investigators quickly discovered that the fire had caused extensive polychlorinated biphenyl ("PCB") contamination at the GE facility. The cleanup of this PCB has already cost millions and is expected to cost millions more. GE submitted a claim for the PCB cleanup to its insurer, Arkwright, which Arkwright agreed to pay. Arkwright in turn presented a claim for the PCB cleanup to its reinsurer, National Union, which National Union refused to pay, on the grounds that the PCB contamination was a "pre-existing condition." National Union, however, had not been notified of the fact of the fire until June 18, 1990, and thus was unable to conduct its own investigation of the PCB contamination.
 
 
 4
 Arkwright thereafter filed a diversity action against National Union in the United States District Court for the Southern District of New York ("the New York action"). Neither Murray nor UBA is a party to the New York action, which is still pending. In the course of discovery in the New York action, National Union served subpoenas duces tecum on Murray, Gay & Taylor, and UBA. These subpoenas demanded production of certain documents concerning the investigations of the PCB contamination. Murray filed, in the three judicial districts in which these documents were kept, motions to quash these subpoenas on the basis of attorney-client privilege and work product immunity. National Union responded by filing, in the same judicial districts, motions to compel production of these documents.
 
 
 5
 Murray's own documents were kept at Murray's headquarters in the Southern District of West Virginia. The district court for that district issued an order that denied National Union's motion to compel, Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co., 771 F.Supp. 149 (S.D.W.Va.1991), but the Fourth Circuit vacated this order in National Union Fire Insurance Co. v. Murray Sheet Metal, 967 F.2d 980 (4th Cir.1992). On remand, National Union's motion to compel was granted in part and denied in part. Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., 148 F.R.D. 552 (S.D.W.Va.1993).
 
 
 6
 The subpoenaed Gay & Taylor documents were kept at Gay & Taylor's offices in the Northern District of Alabama. In unpublished opinions, the district court for that district granted National Union's motion to compel and the Eleventh Circuit affirmed.
 
 
 7
 The subpoenaed UBA documents that are the subject of this appeal were kept at UBA's offices in the Northern District of Ohio. Murray submitted to the district court a "privileged documents log," which lists and briefly describes 38 documents, held by UBA, that Murray claims are protected by attorney-client privilege, work product immunity, or both. The district court ordered UBA to turn over documents 21, 22, 27, and 28 to the court for an in camera inspection, because it found there is a substantial question as to whether they are protected by work product immunity. Similarly, the district court ordered UBA to turn over documents 20, 23, 24, 36, and 38 to the court for an in camera inspection, because it found there is a substantial question as to whether they are protected by attorney-client privilege. The district court stayed its decision with respect to documents 7 and 9-19, because the discoverability of copies of those documents was then being considered by the District Court for the Southern District of West Virginia after remand from the Fourth Circuit.[1] The district court held that documents 1-6, 8, 25, 26, 29-35, and 37 were not protected by attorney-client privilege or work product immunity, and granted National Union's motion to compel as to those documents. The district court, however, stated that UBA may redact any document portions that contain opinion work product or "that do not bear on the PCB contamination at the site but which tend to implicate Murray with regard to the origins of the fire." (App. at 151.) Murray filed a notice of appeal from the district court's order and filed a separate motion to stay the district court's order pending the outcome of this appeal. The district court has not ruled on the motion to stay, and UBA, at Murray's direction, has not provided any documents to the district court for in camera inspection or to National Union.
 
 
 8
 In an earlier order, we decided that we have jurisdiction to hear Murray's appeal. We accordingly turn to the merits of its appeal.
 
 II.
 A. Work Product Immunity
 
 9
 We review the district court's determinations of the discoverability of the documents for an abuse of discretion. Toledo Edison v. GA Technologies, Inc., 847 F.2d 335, 341 (6th Cir.1988). Murray first argues that the documents are protected by the qualified work product immunity established by Fed.R.Civ.P. 26(b)(3), which provides in relevant part:
 
 
 10
 (3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
 
 
 11
 Murray does not dispute that the documents are "otherwise discoverable" under Rule 26(b)(1). Hence, we must determine whether Murray proved the documents were "prepared in anticipation of litigation ... by or for another party or by or for that other party's representative." If Murray met this burden, the documents are entitled to qualified work product immunity. This immunity is not absolute, because National Union may discover the documents if it proved it has "substantial need" of the materials and is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Toledo Edison, 847 F.2d at 339-40.
 
 
 12
 The district court held that documents 21, 22, 27, and 28 should be reviewed in camera to determine whether they are protected by the qualified work product immunity provided by Rule 26(b)(3). The district court further held that none of the other documents were protected by Rule 26(b)(3) because they were not prepared in anticipation of litigation and because National Union could not obtain the substantial equivalent of the documents by other means.
 
 
 13
 The mere fact that a document is prepared when litigation is foreseeable does not mean the document was prepared in anticipation of litigation; rather, "[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." National Union Fire Ins., 967 F.2d at 984 (emphasis in original). See also C. Wright & A. Miller, Federal Practice and Procedure Sec. 2024, at 198 ("the test should be whether, in light of the nature of the document and the factual situation in a particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.")
 
 
 14
 Several facts support Murray's contention that each of the documents was prepared because of the prospect of litigation. First, each of the documents was prepared at a time when there was a clear and definite prospect of Murray's involvement in litigation concerning the fire. Second, the preparation of each document was part of an effort to assess the scope of Murray's potential liability for the fire. Third, Murray submitted the affidavit of Murray president Jack R. Murray ("Mr. Murray"), in which he stated:
 
 
 15
 3. Because of our workers' proximity to the fire site and their use of a cutting torch at the fire scene, I felt on April 4, 1990 that Murray Sheet Metal Co., Inc. might be involved in future litigation over the fire.
 
 
 16
 4. We began an immediate investigation of the fire's cause on April 4, 1990 to prepare for possible litigation.
 
 
 17
 (App. at 141.) That the documents were not prepared by Murray does not vitiate the probative force of Mr. Murray's affidavit. Mr. Murray directed Murray's post-fire actions, and those actions started the causal chain that led to the preparation of these documents. Thus, Mr. Murray's concerns bear a relationship to the reason the documents were prepared. Finally, that Steptoe & Johnson was quickly retained after the fire is important evidence that the possibility of litigation was the impetus for the UBA investigation generally and for the preparation of the documents in particular.[2] In summary, objective and subjective evidence shows that the documents were prepared because of the prospect of litigation.
 
 
 18
 The district court, however, reasoned that "if an investigation by an independent firm demonstrates anticipation of litigation, almost all of the work undertaken by UBA, here and elsewhere, would be given a privileged status." (App. at 149.) Without regard to whether work undertaken by UBA "elsewhere" might be protected under Rule 26(b)(3), the documents held by UBA in this case were prepared in anticipation of litigation, and the district court abused its discretion by finding to the contrary.
 
 
 19
 Rule 26(b)(3) also provides, however, that documents must be prepared "by or for another party or by or for that other party's representative[.]" Cf. Fed.R.Civ.P. 26(c) (providing, "the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment," etc.) (emphasis supplied). The Ninth Circuit accordingly has held that Rule 26(b)(3), "on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." In Re California Pub. Util. Comm'n, 892 F.2d 778, 781 (9th Cir.1989). We agree, because "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " United States v. Ron Pair Enter., 489 U.S. 235, 242 (1989) (citation omitted). The "by or for a party" language of Rule 26(b)(3) does not present such a "rare case," because neither Murray nor the Advisory Committee Notes present any reason to conclude that Congress did not mean what it so plainly said.[3] Accord FTC v. Grolier, 462 U.S. 19, 25 (1983) (dictum); C. Wright & A. Miller, Federal Practice and Procedure Sec. 2024, at 201-2 ("[T]he protection [of Rule 26(b)(3) ] extends only to documents obtained by 'another party' or his representative and in context this rather clearly means another party to the litigation in which discovery is being attempted.... [D]ocuments prepared for one who is not a party to the present suit are wholly unprotected even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit.")[4]
 
 
 20
 Here it is undisputed that Murray, Erie, and UBA are neither parties to, nor representatives of any party to, the litigation from which the subpoena duces tecum arose, i.e. the New York action. We therefore hold that none of the documents are protected by Rule 26(b)(3).[5] Thus, contrary to the district court's order, no in camera review of documents 21, 22, 27, and 28 is necessary to determine whether those documents are protected by Rule 26(b)(3).
 
 
 21
 However, even if we were somehow to accord party status to Murray or UBA, our determination of the qualified work product immunity issue would be no different, because National Union proved it has "substantial need" of the documents and "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." In considering this issue, "attention is directed at alternative means of acquiring the information that are less intrusive to the lawyer's work and [at] whether or not the information might have been furnished in other ways." Toledo Edison, 847 F.2d at 340. Each of the documents in question contains information relating to UBA's investigation of the fire. The parties do not dispute that National Union had no opportunity to investigate the fire scene before June 18, 1990, which was the day it was notified of the fire. By that time the fire scene had been substantially altered by cleanup efforts. National Union thus had no opportunity to investigate the fire scene as UBA did, and hence one cannot say that the information sought by National Union "might have been furnished in other ways." Moreover, Murray does not contend that the Gay & Taylor or Murray in-house investigation documents, to which National Union has access, are the "substantial equivalent" of the documents held by UBA; thus, National Union does not have alternative, less intrusive means of acquiring the information it seeks.[6] We therefore agree with the district court that National Union made the showing necessary to overcome Murray's assertion of qualified work product immunity.
 
 
 22
 Murray relatedly argues that the documents are protected by Rule 26(b)(3) absolute work product immunity for an attorney's mental impressions or legal opinions.[7] Murray maintains that the documents reflect the mental impressions of Murray's counsel, Steptoe & Johnson. This argument fails for the same reason that Murray's qualified work product immunity argument failed. Rule 26(b)(3) protects "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation[,]" and Murray is not a party.
 
 B. Attorney-Client Privilege
 
 23
 Murray further argues that documents 1-4, 8, 20, 23, 24, 27, 28, and 31-34 are protected by the attorney-client privilege. The elements of this privilege are well-settled in this circuit:
 
 
 24
 (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived.
 
 
 25
 United States v. Goldfarb, 328 F.2d 280, 281 (6th Cir.), cert. denied 377 U.S. 976 (1964) (quoting 8 J. Wigmore, Evidence in Trials at Common Law Sec. 2292, at 554 (McNaughton rev. 1961)). Murray contends that these documents are protected by the attorney-client privilege because they were "prepared by UBA following meetings with counsel and Murray[,]" and thus reveal confidential communications made by Murray to Steptoe & Johnson. Murray's brief at 10. Alternatively, Murray contends that these documents contain confidential communications that Murray made directly to UBA while UBA was closely cooperating with Steptoe & Johnson.
 
 
 26
 The district court did not abuse its discretion in holding that documents 1-4, 8, 27-28, and 31-34 are not protected by the attorney-client privilege. Murray describes these documents in the privileged document log. Documents 1 and 2 each are one page correspondence between UBA and Erie concerning the status of the fire investigation. Documents 3 and 4 are a UBA invoice and a UBA expense sheet, respectively. Document 8 is a one page "transmittal letter for witness interviews," sent by Erie to UBA. Documents 27 and 28 are summaries of work done by UBA on May 3, 1990, and May 25, 1990, respectively. Document 31 is a two page excerpt from a welding textbook. Documents 32 and 33 are each a "list of evidence obtained by Mike Kendrick." Document 34 is the "chain of custody record" sent by REIC Labs to UBA. These descriptions raise no substantial question as to whether any of these documents contain confidential communications made by Murray for the purpose of receiving legal advice.
 
 
 27
 The district court did hold, however, that documents 20, 23, 24, 36, and 38 should be reviewed in camera to determine if they are protected by the attorney-client privilege. This holding was not an abuse of discretion because these documents are communications between UBA and Murray's counsel. We note, however, that UBA is not a "client" of Murray's counsel. To find any of these documents to be privileged, therefore, the district court must find (1) that the document reflects privileged communications made by Murray to Murray's counsel, and that the communications did not lose their privileged status because of their disclosure to UBA; or (2) that the document reflects confidential communications made by Murray to UBA for the purpose of ultimately receiving legal advice, and that UBA was acting as the agent of Murray's counsel, United States v. Kovel, 296 F.2d 918, 921-22 (2nd Cir.1961) (Friendly, J.) (attorney-client privilege extends to communications made to an attorney's agent for the purpose of ultimately receiving legal advice); or (3) that the document contains a confidential communication, made by UBA as Murray's agent, for the purpose of receiving legal advice, Wigmore, supra, Sec. 2317, at 618 (explaining that "[a] communication ... by any form of agency employed or set in motion by the client is within the privilege") (emphasis in original).
 
 
 28
 The order of the district court is AFFIRMED, except that documents 21, 22, 27, and 28 should be produced without any in camera review, and this matter is REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 We accordingly do not consider in this appeal whether documents 7 and 9-19 are discoverable by National Union
 
 
 [2]
 Documents 30 and 32 were prepared on April 6, 1990. Steptoe was not retained until April 18, 1990. Since Steptoe's hiring so closely followed the preparation of these two documents, however, we think Steptoe's hiring is probative as to whether these two documents were prepared in anticipation of litigation
 Separately, Murray also contends in its reply brief that the documents were prepared in anticipation of litigation because "numerous subcontractors sent claims to Murray contending that Murray was responsible for the occurrence at the [GE] plant" We decline to consider this contention because it was raised for the first time in Murray's reply brief Wright v. Holbrook, 794 F.2d 1152, 1156 (6th Cir.1986).
 
 
 [3]
 The sharp edge of Rule 26(b)(3) is blunted somewhat by Rule 26(c), which allows the court to issue a protective order if necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Rule 26(c) is inapplicable here, however, for two reasons. First, the court may only make a Rule 26(c) order "[u]pon motion by a party or by the person from whom discovery is sought," and no Rule 26(c) motion has been made here. Second, resort to Rule 26(c) to protect nonparties whose work product is unprotected under Rule 26(b)(3) would effectively remove the "by or for a party" requirement from Rule 26(b)(3)
 
 
 [4]
 Murray says "[t]he fact that Murray has not been joined as a party in the instant action is immaterial[,]" and cites as support Kent Corp. v. NLRB, 530 F.2d 612 (5th Cir.), cert. denied, 429 U.S. 920 (1976), and Duplan Corp. v. Moulinage et Retordene de Chavanoz, 509 F.2d 730 (4th Cir.1974) (en banc), cert. denied, 420 U.S. 997 (1975). These cases are inapposite. In Kent, the plaintiff (Kent) sought production of certain NLRB documents under the Freedom of Information Act. NLRB had prepared the documents in anticipation of litigation with Kent, but the envisioned litigation did not happen. NLRB nonetheless asserted work product immunity for the documents. The court held that Rule 26(b)(3) applied, reasoning that the application of the rule "cannot properly be made to turn on whether [the envisioned] litigation actually ensued." 530 F.2d at 623. This case, however, only broadens the scope of the Rule 26(b)(3) protection afforded to parties--by protecting documents prepared in anticipation of litigation other than the litigation in which the discovery is sought--and by no means extends Rule 26(b)(3) protection to non-parties, because NLRB was a party to the litigation in which the discovery was sought, i.e. the FOIA litigation. Similarly, in Duplan, the plaintiff sought production of certain documents prepared by Chavanoz in connection with previous, terminated litigation. Chavanoz argued that the documents were protected by Rule 26(b)(3). The court agreed, holding that work product material "is immune from discovery although the litigation in which it was developed has been terminated." 509 F.2d at 732. Here again the court merely broadened the Rule 26(b)(3) protection afforded to parties, because Chavanoz was a party to the patent litigation in which the discovery was sought
 
 
 [5]
 We are aware that the Fourth Circuit did not mention the Rule 26(b)(3) "by or for a party" requirement in considering Murray's work product argument in National Union Fire Ins. v. Murray Sheet Metal, 967 F.2d 980 (4th Cir.1992). We believe this omission was an oversight
 
 
 [6]
 In its reply brief, Murray stresses that on April 29, 1993, the District Court for the Southern District of West Virginia ordered GE to turn over to National Union certain documents relating to GE's in-house investigation of the PCB contamination resulting from the fire. Murray contends that this order provides National Union with the substantial equivalent of the information sought from UBA. Murray, however, failed to make the fact of this order a part of the record in this appeal, by means of a motion for reconsideration or otherwise. National Union therefore has had no opportunity to refute the argument that Murray now makes to this court, and we decline to consider it
 
 
 [7]
 Rule 26(b)(3) provides in relevant part:
 In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.