**Sally BROESSEL, On Behalf of Herself and All Others Similarly Situated, Plaintiff,**

v.

**TRIAD GUARANTY INSURANCE CORPORATION, Defendant.**

**No. 1:04 CV 00004 JHM.**

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Aug. 2, 2006.

Dana E. Deering, Parry, Deering, Futscher & Sparks PSC, Covington, KY, Douglas Bowdoin, Douglas Bowdoin, PA, Orlando, FL, Tamra C. Givens, Terry A. Smiljanich, W. Christian Hoyer, James, Hoyer, Newcomer & Smiljanich, PA, Tampa, FL, for Plaintiff.

Jennifer R. Vala, Lisa Wolgast, Nolan C. Leake, King & Spalding, LLP, Atlanta, GA, Ronald G. Sheffer, Sheffer Law Firm, PLLC, Louisville, KY, for Defendant.

## *ORDER*

GOEBEL, United States Magistrate Judge.

Before the Court are Plaintiff's Motion to Compel (DN 103), Plaintiff's supplement (DN 116), Defendant's response (DN 120), Plaintiff's reply (DN 129), and Defendant's surreply (DN 142). At issue are documents that Defendant has withheld from production on claim of work-product protection, the attorney-client privilege, and/or the joint defense/common interest privilege. Pursuant to an earlier order (DN 132), Defendant submitted directly to the undersigned for *in camera* inspection all documents that it has withheld from production on claim of privilege or work-product protection. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## A

■ Pursuant to Rule 26(b)(1), discovery must be "relevant to the claim or defense of any party." Fed.R.Civ.P.26(b)(1) (2000 Amendment), Advisory Committee's Note, 2000 amendments; *see Phalp v. City of Overland Park, Kansas,* 2002 WL 1162449, *3 fn. 3 (D.Kan.2002). The undersigned notes that four of the documents withheld by Defendant are joint defense agreements. *See* 007382–007392, 00751–007581, 008962–008966, 008967–008976. The parties have argued vigorously on the question of whether these documents are privileged. However, both seemed to have overlooked a precedent issue. Specifically, are these documents relevant within the meaning of Rule 26(b)(1)? While these documents may be helpful to the Court in addressing this discovery dispute, they are not "relevant to the claim or defense of any party." Fed.R.Civ.P.26(b)(1). For this reason, the undersigned concludes the joint defense agreements are not discoverable.

Defendant appears to concede that the remainder of the withheld documents are relevant (DN 120). For this reason the undersigned will turn to Defendant's claim or claims of privilege as to each document withheld from production. The parties agree that federal common law on privilege applies to this discovery dispute.

Rule 26(b)(1) of the Federal Rules of Civil Procedure mandates that privileged matters are afforded an absolute protection from discovery. This is distinguishable from the qualified protection from discovery that is afforded work-product.[1] Fed.R.Civ.P. 26(b)(3); *In re Perrigo Company,* 128 F.3d 430, 437 (6th Cir.1997) (citations omitted); *Toledo Edison Co. v. G A Technologies,* 847 F.2d 335, 338–341 (6th Cir.1988).

## B

Defendant has asserted only the attorney-client privilege as to documents 007283–

07286, 007564, 007650–007651, 007654, 007662, 007665, 007671–007672, 007685, 007688–007689, 007690–007692, 007693, 007698–007699, 007759–007760, 007761, and 007806.

■ Case law often articulates the elements of the attorney-client privilege as follows:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived."

*Reed v. Baxter,* 134 F.3d 351, 355–356 (6th Cir.1998) (citations omitted). However, these elements apply to only a portion of the confidential communications that courts have deemed subject to the attorney-client privilege. For example, the privilege applies to confidential communications from counsel to client that set forth legal advice or reveal the substance of the client confidence. *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir.1990) (citations omitted); *Bank Brussels Lambert v. Credit Lyonnais,* 160 F.R.D. 437, 441–442 (S.D.N.Y.1995) (citations omitted). The attorney-client privilege also extends to communications made by noncontrol group employees (1) at the direction of their superiors, (2) in order to secure legal advice for the corporation, (3) about matters within the scope of the employee's corporate duties; and (4) while the employees were aware that they were being questioned in order that the corporation could obtain legal advice. *Upjohn Co. v. United States,* 449 U.S. 383, 394, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Additionally, confidential communications disclosed to or made in the presence of certain agents of the attorney (e.g., accountants, engineers, or experts) to further the rendition of legal advice or in connection with the legal representation are subject to the attorney-

---

[1]. The protection afforded work-product is not a privilege as the term is used in the Rules of Civil Procedure or the Law of Evidence. *Hickman v. Taylor,* 329 U.S. 495, 509–510 & n. 9, 67 S.Ct. 385, 91 L.Ed. 451 (1947). If an adverse party demonstrates substantial need and an inability to obtain the equivalent without undue hardship then the Court may order such work-product be produced, provided it does not reveal an attorney's mental impressions and opinions. *In re Perrigo Company,* 128 F.3d 430, 437 (6th Cir. 1997) (citations omitted); *Toledo Edison Co.,* 847 F.2d 335, 338–341 (6th Cir.1988).

client privilege. *See e.g., United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989). Further, the privilege extends to communications among corporate employees that reflect legal advice rendered by counsel to the corporation. *In re Grand Jury 90–1,* 758 F.Supp. 1411, 1413 (D.Colo.1991) (President of the corporation conveyed in a letter to the Board of Directors legal advice he received from outside counsel); *SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 518 (D.Conn.) *appeal dismissed,* 534 F.2d 1031, 1032 (2d Cir.1976) ("A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.").

█ The burden of establishing the existence of the attorney-client privilege rests with Defendant because it is asserting the privilege in response to Plaintiff's discovery requests. *U.S. v. Dakota,* 197 F.3d 821, 825 (6th Cir.1999) (citing *In re Grand Jury Investigation No. 83–2–35,* 723 F.2d 447, 450 (6th Cir.1983)); *see also Ross v. City of Memphis,* 423 F.3d 596, 606 (6th Cir.2005).

After considering the arguments of the parties and conducting a review of documents 007283–07286, 007564, 007650–007651, 007654, 007662, 007665, 007671–007672, 007685, 007688–007689, 007690–007692, 007693, 007698–007699, 007759–007760, 007761, and 007806, the undersigned concludes that Defendant has satisfied its burden of demonstrating that each communication or note summarizing a communication is subject to the attorney-client privilege.

## C

Defendant has asserted the joint defense/common interest privilege as to the remainder of the documents it has withheld from production.[2]

█ "The common interest privilege is not an independent basis for privilege, but an exception to the general rule that the attor-

ney-client privilege is waived when privileged information is disclosed to a third party." Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine,* American Bar Association Section of Litigation at 196 (4th ed.2001). For this reason, it "assumes the existence of a valid underlying privilege." *Id.* Additionally, it assumes "there is a valid basis for exchanging information with a third party without undermining the requirement of confidentiality for the attorney-client privilege to apply." *Id.* "In effect, it states that privileged communications shared among and within some group of people will be deemed to have been made in confidence." *Id.*

█ Essentially, there are three situations where this exception is deemed to apply. *Id.* at 200–206. The first being a single attorney representing multiple clients in the same matter. *Id.* at 200–201. The first situation does not apply to the circumstances herein.

█ Another situation where the common interest is deemed sufficient to preclude waiver is when parties share a common defense. *Id.* at 201. This joint defense concept developed in the "criminal context when multiple defendants, each having separate counsel, share information to effect a united defense." *Id.* More and more, to protect the joint defense privilege, parties enter into written joint defense agreements in an effort to assure that information shared among the attorneys for each of the defendants will remain privileged despite the sharing. *Id.* Here, Defendant and the other six members of the mortgage insurance industry in the United States did just that in May 2003. All seven signatories to this agreement appreciated the need to pool their resources in preparing a common or united defense to the claims asserted in an alleged class action suit filed against one of its members, Mortgage Guaranty Insurance Corporation ("MGIC") (DN 120, Exhibit 1, Affidavit of Earl Wall; 007382–007392). Essentially, all seven mem-

---

2. In a few instances Defendant has also asserted the attorney-client privilege. See documents 007380–007381, 007559, 007560, 007652–007653, 007660–007661, 007663–007664, 007666–007667, 007673–007674, 007675–007676, 007679–007680, 007681–007682, 007683–007684, 007686–007687, 007694–007695, 007696–007697, 007700–007701, 007709–007714, and 007820. For the reasons set forth in this section, the assertion of both privileges is redundant.

bers recognized they may become co-defendants in that action or become defendants in an alleged class action raising the same claims (DN 120, Exhibit 1, Affidavit of Earl Wall; 007382–007392). While the seven members of the mortgage insurance industry did not become co-defendants in the same civil action, all but one are presently defending against the same claims asserted in six alleged class action lawsuits prosecuted by the same law firm.

The third and final situation where the common interest is deemed sufficient to preclude waiver is "when two or more clients share a common legal or commercial interest and, therefore, share legal advice with respect to that common interest." *Id.* at 203. "The common interest doctrine encourages parties working with a common purpose to benefit from the guidance of counsel, and thus avoid pitfalls that otherwise might impair their progress toward their shared objective." *Id.* The doctrine has evolved from *Duplan Corp. v. Deering Milliken*, 397 F.Supp. 1146 (D.S.C.1974), "which was limited to a common shared legal, rather than a common shared financial or commercial, interest." Epstein, *supra*, at 203. Notably, "[u]nlike the joint defense privilege, the common interest does not require or imply that an actual suit is or ever will be pending." *Id.*

After considering the arguments of the parties as well as the affidavits of Earl F. Wall, General Counsel of Defendant, and Suzanne C. Hutchinson, Executive Vice–President of the Mortgage Insurance Companies of America ("MICA"), the undersigned

concludes the third situation applies to the circumstances herein. True, the seven members of the mortgage insurance industry did enter into a joint defense agreement in May of 2003. However, as evidenced by many of the documents withheld and indicated in Mr. Wall's affidavit, these seven companies and the trade organization they created, MICA, have clearly shared a "common legal interest" [3] that extends beyond pooling their resources to prepare a common or united defense to the claims asserted in an alleged class action suit. Defendant has satisfied its burden of demonstrating a "common legal interest" with the other six members in the industry and MICA that extends to legislative and regulatory matters, as well as in matters in litigation or which could lead to litigation. For this reason, the undersigned finds Defendant's assertion of the common interest privilege well-taken, including the communications made years before the filing of this action and made after Radian Guaranty, Inc. ("Radian") withdrew as a member of MICA in July of 2003.[4]

Defendant recently produced the Property Casualty Insurers Association of America ("PCIAA") documents discussed in Plaintiff's motion to compel.[5] Thus, the Court need not address Plaintiff's arguments regarding those documents.

The undersigned has considered Plaintiff's argument regarding document 007566–007568 (DN 129 at page 2 and footnote 3) and concludes the common interest privilege does apply because on March 6, 1998, Amerin was a mortgage insurance company that

---

**3.** There are two lines of cases that reflect differing views regarding the common interest arrangement. *Id.; Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 348 (N.D.Ohio 1999). The undersigned has applied the more restrictive standard which is expressed in *Bank Brussels Lambert v. Credit Lyonnais,* 160 F.R.D. 437, 447 (S.D.N.Y.1995). Epstein, *supra*, at 203–204, 206; *Libbey Glass, Inc.,* 197 F.R.D. at 348. In *Bank Brussels Lambert* the Court concluded:
> "The common interest doctrine, then, has both a theoretical and a practical component. In theory, the parties among whom privileged matter is shared must have a common legal, as opposed to commercial, interest. In practice, they must have demonstrated cooperation in formulating a common legal strategy."

160 F.R.D. at 447. Notably, the common interest doctrine, "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id.*

**4.** The undersigned concludes that Radian's business dispute with MICA on an unrelated matter does not prevent it from continuing to share this "common legal interest" with Defendant, the other five members of the industry and MICA.

**5.** Defendant provided this information in the cover letter that accompanied the withheld documents it submitted to the undersigned for an *in camera* review.

shared a common legal interest with Defendant, the other members in the industry and MICA. According to Defendant, Amerin subsequently merged with another mortgage insurance company to form Radian in 1999 (DN 142 at 3).

The undersigned has also considered Plaintiff's argument regarding 007431–007433, 007434–007436, 007887–007889. An *in camera* review of these documents reveals that each document sets forth a series of emails, the earlier of which were copied to Pete Mills with Countrywide, a lender. Certainly, the common interest privilege does not apply to the emails that were copied to Mr. Mills. However, the common interest privilege does apply to the subsequent emails. In sum, Defendant may redact from each document the emails that were not copied to Pete Mills before it produces the three documents.

■ Next, the undersigned concludes that no privilege applies to the following documents 007438–007441, 007443–007458, 007461–007496, 007584–007620, 007704–007706, 007765–007771, 007773–007779, 008168–008234. These non-privileged documents are attachments to communications that are subject to privilege. The undersigned has considered whether these attachments are protected from discovery under the work-product doctrine.[6] While each of these documents were prepared or obtained before or during this litigation, the undersigned concludes only 007584–007620 was obtained or prepared because of litigation and not for some other purpose. *Toledo Edison Co.,* 847 F.2d 335, 339, 341 (6th Cir.1988); Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine,* American Bar Association Section of Litigation at 506 (4th Ed.2001). Reading the material at 007584–007620 could very well reveal the mental impressions, opinions, and trial strategy of Defendant's counsel. Since case law and Rule 26(b)(3) imply a near absolute protection is to be accorded to such work-product, the undersigned concludes it should

not be produced to Plaintiff. *Hickman v. Taylor,* 329 U.S. 495, 510–513, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also Upjohn Co. v. United States,* 449 U.S. 383, 400–402, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *In re Perrigo Company,* 128 F.3d 430, 437 (6th Cir. 1997) (citations omitted); *Toledo Edison Co.,* 847 F.2d at 338–341. Notably, "only disclosures that are 'inconsistent with the adversary system' are deemed to waive work-product protection." Epstein, *supra,* at 610. Since the material has not been disclosed to an adversary the undersigned concludes a waiver has not occurred. In sum, Defendant shall produce 007438–007441, 007443–007458, 007461–007496, 007704–007706, 007765–007771, 007773–007779, and 008168–008234 because they are not subject to privilege.

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART.

**IT IS FURTHER ORDERED** that **on or before August 28, 2006,** Defendant shall produce to Plaintiff redacted versions of 007431–007433, 007434–007436, 007887–007889. Specifically, Defendant may redact from each document the emails that were not copied to Pete Mills.

**IT IS FURTHER ORDERED** that **on or before August 28, 2006,** Defendant shall produce copies of 007438–007441, 007443–007458, 007461–007496, 007704–007706, 007765–007771, 007773–007779, 008168–008234.

---

**6.** If the document can be said to have been obtained or prepared in anticipation of litigation then it is entitled to a qualified protection from discovery. *See In re Perrigo Company,* 128 F.3d 430, 437 (6th Cir.1997); *Toledo Edison Co.,* 847 F.2d 335, 338–341 (6th Cir.1988); *see also Arkwright Mutual Insurance Co. v. National Union Fire Insurance Co.,* 1994 WL 5899, \* 3 (6th Cir.1994) (unpublished opinion).