Harold D. JONES, as Liquidating
Trustee, Plaintiff,

v.

TAUBER & BALSER, P.C.,
et al., Defendants.

Civil Action No. 1:11–CV–2995–AT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 26, 2013.

David James Worley, James M. Evangelista, Atlanta, GA, Jeffrey R. Harris, and Stephen G. Lowry, Harris Penn Lowry LLP–GA, Savannah, GA; J. Antonio DelCampo, DelCampo Weber & Grayson, LLC, Dunwoody, GA, for Plaintiff.

Tauber & Balser, P.C.: Johannes Stuart Kingma, John L. Bunyan, John Colquitt Rogers, Lindsey Palmer Hettinger, and Thomas Alan Cox, Carlock Copeland & Stair, LLP, Atlanta, GA. Habif, Arogeti & Wynne, LLP: Alison M. Ballard, John M. Gross, John K. Rezac, Rachael Lee Zichella, and Todd Edward Jones, Taylor English Duma LLP, Atlanta, GA. HA & W Holdings, LLC: Alison M. Ballard, John M. Gross, John K. Rezac, Rachael Lee Zichella, and Todd Edward Jones, Taylor English Duma LLP, Atlanta, GA. Sheldon D. Zimmerman: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John L. Bunyan, John Colquitt Rogers, and Thomas Alan Cox, Carlock Copeland & Stair, LLP, At-

**512**

lanta, GA. Mark I. Murovitz: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John L. Bunyan, John Colquitt Rogers, and Thomas Alan Cox, Carlock Copeland & Stair, LLP, Atlanta, GA. Martin L. Tanenbaum: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John Colquitt Rogers, Carlock Copeland & Stair, LLP, Atlanta, GA. Leslie Balmforth: John Colquitt Rogers, Carlock Copeland & Stair, LLP, Atlanta, GA. Paul D. Dopp: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John L. Bunyan, John Colquitt Rogers, and Thomas Alan Cox, Carlock Copeland & Stair, LLP, Atlanta, GA. Richard W. Millman: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John Colquitt Rogers, Carlock Copeland & Stair, LLP, Atlanta, GA. James M. Welch: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John Colquitt Rogers, Carlock Copeland & Stair, LLP, Atlanta, GA. Scott A. Rittenberg: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John Colquitt Rogers, Carlock Copeland & Stair, LLP, Atlanta, GA. Samuel L. Tuck: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John Colquitt Rogers, Carlock Copeland & Stair, LLP, Atlanta, GA. Howard A. Zandman: Christopher Scott Anulewicz, Malissa Anne Kaufold–Wiggins, and Michael J. Bowers, Balch & Bingham LLP–Atl, Atlanta, GA; John Colquitt Rogers, Carlock Copeland & Stair, LLP, Atlanta, GA, for Defendants.

### *ORDER*

AMY TOTENBERG, District Judge.

This matter is before the Court on Defendants Tauber & Balser, P.C., Sheldon Zimmerman, Mark Murovitz, and Paul Dopp's (collectively the "T & B Defendants" or "T & B") Motion for Clarification [Doc. 137]. On July 5, 2013, the Court denied Plaintiff's motion to compel the production of certain communications between Carlock Copeland & Stair, LLP ("Carlock Copeland"), the T & B Defendants' counsel, and CAMICO Mutual Insurance Company ("CAMICO"), the T & B Defendants' professional liability insurer. The Court held that from August 25, 2009 onward, such communications were protected work-product and prior to August 25, 2009, CAMICO's communication with Carlock Copeland were protected by virtue of the common interest privilege doctrine.

In response to the T & B Defendants' Motion for Clarification, Plaintiff urges the Court to reconsider its decision regarding the common interest privilege. In response, the T & B Defendant's stand by the Court's decision regarding the common interest privilege and go further to argue that documents created before August 25, 2009 were also protected work product.

After a thorough and fresh review of the documents at issue and the parties' arguments for and against production, the Court again concludes that the subject documents are not subject to compelled disclosure. The Court finds however, that the work product doctrine provides a more helpful approach to resolving the issues regarding the pre-August 25 documents. Accordingly, with few exceptions, the T & B Defendants have no duty at this time to produce the documents listed on their

CAMICO Privilege Log. (*See* T & B Defendants' CAMICO Privilege Log, Doc. 155–1.)[1]

## I. BACKGROUND

On July 5, 2013, the Court ruled on a series of discovery motions in this matter. (Doc. 135.) In particular, the Court ruled that the work product doctrine did not attach to communications with CAMICO, the T & B Defendants' professional liability insurer, until August 25, 2009, the date on which Plaintiff's counsel first contacted the T & B Defendants' counsel about Plaintiff's potential claim against them. (Doc. 136 at 54–55.) The Court then ruled, however, that communications between Carlock Copeland, counsel for the T & B Defendants, and CAMICO (even those predating August 25, 2009) are protected by the common interest privilege. (Doc. 135 at 56 (citing CAMICO Privilege Log, Doc. 98–1 (Nos. 2–6, 8, 11, 15–16, 18–19, 21–26, 28–29)).)

On July 17, 2013, the T & B Defendants filed a Motion for Clarification. (Doc. 137.) The T & B Defendants sought clarification regarding their obligation to produce certain communications with their professional liability insurer, CAMICO. The T & B Defendants recognized that some documents on CAMICO's privilege log are identical to some on their own. (Doc. 137 at 2.) Thus, they proposed the uncontroversial position that if a document in CAMICO's possession is protected, the same document in the T & B Defendants' possession is also protected.

In response, Plaintiff asked the Court to reconsider its decision that these documents are protected in the first place. (Doc. 142.) Plaintiff puts forth several arguments to support his position, arguments that eluded the Court on Plaintiff's original Omnibus Motion to Compel. For example, Plaintiff suggested that the common interest rule applies only to protect against waiver those communications shared directly with the attorney of another member of the community of interest. Here, the communications were between an attorney and a claim specialist at CAMICO. Plaintiff also argued that CAMICO and Carlock Copeland did not have an attorney-client relationship themselves, nor was there a tripartite attorney-client relationship with them and the T & B Defendants. Finally, Plaintiff argued that a strong common interest only arose between T & B and CAMICO once CAMICO determined it had a duty to defend and indemnify the T & B Defendants.

The Court directed the T & B Defendants to respond to Plaintiff's arguments and provide an updated privilege log indicating the precise CAMICO documents in dispute. (Doc. 145.) The Court essentially gave the T & B Defendants and CAMICO "a renewed chance … to designate communications between them (and with counsel) as privileged and support this designation in the face of Plaintiff's attacks." (*Id.* at 5.) The Court warned that "[a] failure to sufficiently support the privilege will waive the privilege as to such communications." (*Id.*)

On August 12, 2013, the T & B Defendants filed a response to Plaintiff's arguments. (Docs. 155.)[2] Of greatest importance for the instant motion, the T & B

---

1. The Court appends a copy of the T & B Defendants' CAMICO Privilege Log, modified to include entry numbers for ease of reference.

2. CAMICO also filed a response. (Doc. 154.) The Court does not address CAMICO's arguments because the Court finds sufficient basis in the T & B Defendants' arguments to support the work product protection for most of the documents at issue here.

Defendants urged the Court to reconsider its decision that documents created prior to August 25, 2009 were not work product. They argued that the primary motivation for these communications was to aid in possible future litigation and thus, even though actual litigation may not have been imminent, the work product doctrine attached. The T & B Defendants also argued that the common interest privilege applies to protect the documents at issue. Finally, consistent with the Court's Order, the T & B Defendants filed an amended privilege log. (T & B Defendants' CAMICO Privilege Log, Doc. 155–1.)

Then on August 25, 2013, Plaintiff inexplicably filed a "Notice of Request for Oral Argument and Permission to File Sur-Reply to the T & B Defendants' Motion for Clarification." (Doc. 156.) The Court construed this Notice as a Motion, but shortly thereafter, Plaintiff filed an actual Motion for Oral Argument and Motion to File Sur-reply [Doc. 157]. The Court **DENIES** Plaintiff's Motion for Oral Argument but **GRANTS** Plaintiff's Motion to File Sur-reply [Doc. 157]. The Court now turns to the parties' arguments.

## II. ANALYSIS

The Court begins its analysis with the T & B Defendants' assertion that the work product protection applies to CAMICO communications created before August 25, 2009. After concluding that the work product protection extends to most of the documents on the T & B Defendants' CAMICO privilege log, the Court then considers and rejects the notion that Plaintiff has a substantial need for the protected work product. Next, the Court briefly considers the T & B Defendants' and Plaintiff's arguments regarding the common interest privilege. Finally, the Court addresses Plaintiff's arguments wedged into his sur-reply.

## A. Work product Doctrine

In the Court's July 5, 2013 Order, the Court held that the work product protection does not apply to CAMICO communications prior to August 25, 2009. The T & B Defendants urge the Court to find that the work product doctrine attached as soon as CAMICO assigned Carlock Copeland to represent Tauber & Balser, P.C. In his sur-reply, Plaintiff does not dispute the T & B Defendants' renewed call for expanded work product protection and does not argue that he has a substantial need for these documents.

■ Rule 26(b)(3)(A)(ii) protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" unless the requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed.R.Civ.P. 26(b)(3)(A)(ii). "[T]he burden is on the party withholding discovery to show that the documents should be afforded work-product [protection]." *Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650, 654 (S.D.Fla.2009).

In its July 5, 2013 Order, the Court considered this work product doctrine issue in the context of the flurry of numerous other discovery issues the parties presented. The Court held that the T & B Defendants failed to satisfy their burden to justify the application of the work production doctrine for communications created prior to August 25, 2009. In particular, the Court explained that the communications at issue appeared to be part of CAMICO's ordinary course of business. This, coupled with the lack of any showing that litigation was imminent, and in fact evi-

dence that "no coverage issues were apparent and that pre-claim legal assistance was not necessary", persuaded the Court that the work product doctrine did not apply. (Doc. 135 at 55.) The Court now takes a deeper look at the precise documents at issue and concludes that, although no coverage issues arose at the time of these communications, the primary motivating purpose of these communications was in fact to secure the advice of counsel and aid in possible future litigation.

■ The T & B Defendants correctly point out that litigation need not be "imminent" in a temporal sense for the work product protection to attach. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. Unit A Feb. 1981) ("[L]itigation need not necessarily be imminent, as some courts have suggested, [cits], as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.").[3] Thus, to the extent the Court implied that actual litiga-

tion must be around the corner—that temporal imminence was a sine qua non requirement to invoke work product protection—this was incorrect. "The decision whether insurance company investigatory documents were 'prepared in anticipation of litigation' turns . . . on the facts of each case." *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D.Ga.1982). Thus, while a temporally imminent lawsuit is likely indicative of anticipation of litigation—and its presence or absence a factor to consider when assessing work product protection—it is not a requirement. *See id.* ("[A] hard and fast [work product] rule in either direction would be contrary to various goals of modern discovery practice.").

In *Carver*, a district court in this circuit considered whether insurance claims files were protected work product and explained how insurance investigation documents "straddle both ends" of the work product doctrine definition. *Id.* The court

---

3. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981. However, some courts have characterized the work product rule in *Davis* as dicta. *See, e.g., Regions Fin. Corp. v. U.S.*, No. 2:06–cv–0895–RDP, 2008 WL 2139008, at *4 (N.D.Ala. May 8, 2008). The documents at issue in *Davis* were prepared in connection with the preparation of tax return and the court explained that "there was no showing whatsoever of anticipation of litigation." Thus, arguably, the court expressed a more narrow reading of the rule than necessary. Moreover, in an earlier Fifth Circuit ruling, the court applied broader work product protection of documents. *Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132 (5th Cir.1980). In *Hoover*, the court held that appraisal documents were "clear[ly]" prepared in anticipation of litigation because "[d]uring the land acquisition process, the government must necessarily anticipate that negotiations for purchase will fail, thereby requiring condemnation. Appraisals are

therefore obtained both for the purpose of providing a basis for an offer, and to support a claim of just compensation at a subsequent condemnation suit." *Id.* at 1140 n. 8; *see also Pleasant Grove Missionary Baptist Church of Randolph Cnty., Inc. v. State Farm Fire & Cas. Co.*, No. 4:11–cv–157(CDL), 2012 WL 1997916, at *4 (M.D.Ga. June 4, 2012) ("The general rule for determining whether a document can be said to have been 'prepared in anticipation of litigation' is whether 'the document can fairly be said to have been prepared or obtained because of the prospect of litigation, . . . (and not) in the regular course of business.'") (quoting *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D.Ga. 1982)). The T & B Defendants did not argue for this broader reading of the work product doctrine and the Court does not apply it here. Even under the narrower "primary motivating purpose" interpretation of the work product protection, the Court now finds the CAMICO documents protected and thus, these documents would be protected under the broader interpretation as well.

recognized that "it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation." *Id.* However, while one eye may be on litigation, "[i]n the early stages of claims investigation, management is *primarily* concerned not with the contingency of litigation, but with deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter." *Id.* (internal quotations omitted) (emphasis added). The court explained that the facts of each case must be scrutinized to determine when the primary purpose of an insurance investigation changes. "At some point . . . an insurance company's activity shifts from mere claims *evaluation* to a strong anticipation of litigation." *Id.* (emphasis added). "This is the point where the probability of litigating the claim is substantial and imminent. The point is not fixed, it varies depending on the nature of the claim, and the type of investigation conducted." *Id.* Based on this analysis, the court concluded that an insurer's investigation files during initial investigation of a fire loss were discoverable but once the insurer began to suspect arson, the files became protected work product. *Id.*

█ Following this approach, the Court finds that the disputed documents are, for the most part, not discoverable. First, the Court notes that the situation here is not like those often seen in cases like *Carver.* Unlike a typical insurance initiated investigation, which focuses on what the *insurer* should do (e.g., claims evaluation and whether to resist the claim or reimburse the insured), the investigation here focused, even at the outset, entirely on what the *insured* should do in response to a potential legal claim against it. Thus, there is no "shift" from claims assessment

to litigation anticipation. From the start, CAMICO assigned Carlock Copeland to counsel the insured regarding potential legal liability. (*See* Wilson Decl. ¶¶ 5–6, Doc. 99.) There is no indication that the disputed communications that followed were ever connected to the insurer's claim evaluation and instead, they appear primarily related to Carlock Copeland's engagement. And Carlock Copeland's engagement appears to have nothing to do with claims evaluation and everything to do with a potential lawsuit. Moreover, the Court reviewed the documents identified on the privilege log and provided to the Court for *in camera* inspection. This review confirms that, for the most part, documents identified on the T & B Defendants CAMICO privilege log were created primarily to secure the advice of counsel and aid in possible future litigation. *See also Underwriters Ins. Co. v. Atlanta Gas Light Co.,* 248 F.R.D. 663, 668 (N.D.Ga. 2008) ("[F]iles generated during the investigation of third party claims are made in anticipation of litigation and are not discoverable.") (quoting *Taylor v. Temple & Cutler,* 192 F.R.D. 552, 558 (E.D.Mich. 1999)).

█ With this analysis in mind, the Court turns to specific documents identified on T & B's Defendants' CAMICO Log (Doc. 155–1). First, the Court notes that the work product doctrine protects documents made in anticipation of litigation and created "by or for another party or its representative including the other party's attorney, consultant, surety, indemnitor, *insurer,* or agent)." Thus, even communications identified on the T & B privilege log created by CAMICO (the Defendants' insurer) or the Defendants themselves are candidates for work product protection. Based on the description in the privilege log, the Court finds that all the CAMICO documents are protected work product ex-

cept (1) the checks from CAMICO to Carlock Copeland (T & B's Amended Privilege Log, entry nos. 1–10); and (2) two "out of office reply" documents (*id.* entry nos. 36–37). The privilege log provides no indication that the checks were created primarily to aid in possible future litigation. Likewise, documents characterized as "out of office replies" suggest emails that are automatically generated. Emails generated as an automatic response are not created with a primary purpose to aid in litigation, and the T & B Defendants made no argument to suggest that they are. These documents are likewise not protected by the work product doctrine.[4]

### B. Substantial Need

▉ In his memorandum of law in support of his original Omnibus Motion to Compel (Doc. 88–1) and Motion to Compel the Production of Documents from CAMICO (Doc. 89–1), Plaintiff suggested without much elaboration that he has a "substantial need for the requested documents and cannot obtain them from other sources because the T & B entity and the T & B Shareholders are represented by the same counsel, Carlock Copeland, and are all effectively controlled by the Habif Defendants, which also possesses and controls T & B's corporate server, client workpapers, email server and paper files." (Doc. 89–1 at 24; Doc. 88–1 at 23.) This statement fails to address specifically why Plaintiff has a substantial need for the *CAMICO* documents.

Moreover, Plaintiff made no argument that he has a substantial need for such documents in his sur-reply in response to the T & B Defendants' re-assertion of the work product doctrine.

In any case, the Court sees no reason why Plaintiff would have a substantial need for the documents at issue. Plaintiff can take the deposition of CAMICO representatives and inquire into CAMICO's knowledge related to the underlying claim. *See Stern v. O'Quinn*, 253 F.R.D. 663, 685–66 (S.D.Fla.2008) (finding that plaintiff failed to demonstrate requisite substantial need because he could employ interrogatories, conduct interviews and seek other discovery as it relates to the facts sought); *see also Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir.1984) (recognizing that a party did not face undue hardship when it could obtain the necessary information by deposing a witness, rather than obtaining protected work product). For these reasons, the Court finds that Plaintiff cannot overcome the T & B Defendants' assertion of work product protection identified above in Part II.A.

### C. Common Interest

▉ The common interest privilege is an exception to the general rule that disclosure of documents protected by the work product doctrine or attorney client privilege constitutes a waiver of the protection. Parties who share "strong common interests" may also share privileged or protected material without waiving the privilege or protection. *See McKesson Corp. v. Green*, 266 Ga.App. 157, 597 S.E.2d 447, 452 (2004) (recognizing this rule in the context of the work product doctrine); *see also Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 656–657 (S.D.Fla.2009) (applying a similar rule to protected work product under federal law).

As the Court previously recognized, an insurer's communications with the attorney assigned to represent the insured un-

---

4. If these documents contain protected work product, such material may be redacted and the T & B Defendants shall amend their privilege log to identify the redacted material and indicate the reason for the redaction.

der an insurance policy are generally protected by this common interest or attorney-client privilege. *See, e.g., Underwriters Ins. Co. v. Atlanta Gas Light Co.,* 248 F.R.D. 663, 670–71 (N.D.Ga.2008) (Carnes, J.) (finding in an analogous case that the attorney-client privilege protects communications regarding the progress of a case between the insurer and the counsel the insurer retained to represent the insured); *Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.,* 212 F.R.D. 567, 572–73 (E.D.Cal.2002) (holding that the common interest privilege protects communications between the insured and insurance company relating to the claims and defenses in an underlying lawsuit).

Relying on this reasoning, the Court previously held that the protection applicable to the subject documents was not waived by virtue of sharing between CAMICO and Carlock Copeland. Plaintiff makes several arguments challenging this decision.

First, Plaintiff argues that that the common interest rule applies only to protect against waiver those communications shared directly with the attorney of another member of the community of interest. Plaintiff did not present any binding authority, and the Court found none, supporting this limitation. In particular, *McKesson* does not impose this requirement, and at least one district court has applied the common interest rule to find that disclosure among trade association members (non-lawyers) did not result in waiver. *Broessel v. Triad Guar. Ins. Corp.,* 238 F.R.D. 215, 220 (W.D.Ky.2006).

Second, Plaintiff argues that CAMICO and Carlock Copeland did not have an attorney-client relationship themselves, nor was there a tripartite attorney-client relationship with them and the T & B Defendants. In light of the Court's holding regarding the work product doctrine above, this point is irrelevant.

Finally, Plaintiff argues that a strong common interest only arose between T & B and CAMICO once CAMICO determined it had a duty to defend and indemnify the T & B Defendants. Plaintiff has pointed to no authority requiring an actual claim file (or determination regarding duty to defend) before an insurer and insured share a strong enough common interest to warrant sharing protected matter. As the court in *Broessel* recognized, "the common interest does not require or imply that an actual suit is or ever will be pending." *Broessel,* 238 F.R.D. at 220 (quoting Edna Selan Epstein, The Attorney–Client Privilege and the Work–Product Doctrine, American Bar Association Section of Litigation at 203 (4th ed. 2001).)[5]

Considering the Court's revised position on the work product protection related to CAMICO communications and the analysis above, the Court finds that all the documents listed on the T & B Defendants' revised privilege log (Doc. 155–1) are protected from disclosure except the checks and auto-replies noted above in Part II.A.

### D. Plaintiff's Sur–Reply

In Plaintiff's sur-reply, he does not address the T & B Defendants' request to expand the work product protection to

---

5. In passing, Plaintiff suggests that the common interest must be identical. (*See* Doc. 2–3) (citing *Teleglobe USA Inc. v. BCE Inc.,* 493 F.3d 345, 365 (3d Cir.2007)). This is not the law in Georgia and Plaintiff directed the Court to no Eleventh Circuit precedent requiring identical interests for the application of this principle. *See McKesson,* 597 S.E.2d at 451 n. 8 ("The privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects.").

documents created before August 25, 2009. Instead, he makes three mostly unrelated arguments. First, Plaintiff asserts that "[m]any of the materials at issue plainly reflect that they are not privileged—as a matter of public policy and the Rules of the Public Company Accounting Oversight Board ('PCAOB')." (Doc. 157–1 at 7.) This is a novel theory of non-protection that Plaintiff fails to fully develop. In any case, if Plaintiff wishes to pursue a renewed Motion to Compel based on newly acquired evidence, Plaintiff is not precluded from doing so within the confines of the Federal Rules of Civil Procedure, the Court's Local Rules, and this Court's Guidelines. He may not pursue a new theory in his sur-reply.

Second, Plaintiff argues that the T & B Defendants waived any common interest privilege by "apparent[ly] intentional[ly] produc[ing] ... documents" and by failing to provide sufficient description of documents in their privilege log. (Doc. 157–1 at 9.) Plaintiff provides no support for his assertion regarding the apparent intentional production of documents. If Plaintiff is referring to the T & B Defendants' production of documents in response to this Court's July 5, 2013 Order, or any other Order of this Court, it is doubtful that such production would be deemed a waiver of a privilege or protection. *See Collaboration Props., Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 478 (N.D.Cal.2004) (explaining that judicially compelled disclosure does not generally waive the privilege). And the Court, having reviewed the T & B Defendants' privilege log, finds it satisfies specificity requirements under Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure.

Finally, Plaintiff resurrects his argument that the crime-fraud exception bars the application of a privilege to protect CAMICO documents. Now, however, Plaintiff appears to base this argument on newly discovered evidence. In any case, it is improper to insert this argument in a sur-reply. The Court reiterates that, if Plaintiff wishes to pursue another line of discovery arguments, he should refer to the Federal Rules, Local Rules and the Court's guidelines.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the T & B Defendants' Motion for Clarification [Doc. 137], **GRANTS** Plaintiff's Motion to File Sur–Reply [Doc. 157] and **DENIES** Plaintiff's Motion for Oral Argument [Doc. 157]. The Court **MODIFIES** its previous ruling of July 5, 2013 regarding the T & B Defendants' assertion of the work product doctrine to protect CAMICO communications created before August 25, 2009. (*See* Doc. 135 at 53–55.) All documents identified on the T & B Defendants' CAMICO privilege log, except checks (entry nos. 1–10) and those described as "out of office reply" (entry nos. 36–37), are protected work product. Plaintiff is **DIRECTED** to immediately destroy or return all protected documents identified on the T & B Defendants' CAMICO privilege log.

Finally, the Court takes this opportunity to point out the obvious. The discovery disputes in this case appear to be ongoing. As noted above, Plaintiff appears ready to pursue several arguments to support further production of documents. Plaintiff has also indicated that he plans to move to add parties, which suggests that even more discovery may be on the horizon.

Based on the inevitability of discovery disputes in this matter, the current vacancies at this district court, and the Court's extremely busy docket, the Court believes that the appointment of a special master is the most expeditious way to bring this case to a swifter resolution. *See* Fed.R.Civ.P.

53(a)(1)(A) (allowing for the appointment of special master to "perform duties consented to by the parties"). Accordingly, the parties are **NOTIFIED** that, absent objection, the Court intends to appoint a special master to preside over discovery matters in this case.

The Court **DIRECTS** the parties to meet and confer within fourteen (14) days of the entry date of this Order to address (1) the possibility of appointment of a special master and (2) the appropriate and fair distribution of costs associated with the use of a special master if one is appointed. The parties are **DIRECTED** to file a notice on or before *September 6, 2013* informing the Court whether and to what extent they were able to reach an agreement regarding the special master appointment. If the parties agree to the appointment of a special master, the parties are **DIRECTED** to file no later than *September 25, 2013* a joint notice identifying a list of no more than three candidates to serve as special master. If the parties cannot agree on this list, the parties may separately submit their own proposals of no more than three candidates on or before *September 25, 2013*. In this circumstance, the Court will also circulate the name of a proposed special master candidate.

The Court will also consider referring this case to a Magistrate Judge for discovery purposes, although the Court is not at this time confident that the ongoing, complex discovery issues in this case can be "effectively and timely addressed by an available ... magistrate judge of the district." Fed.R.Civ.P. 53(a)(1)(C).

**IT IS SO ORDERED.**

*Jones v. Tauber & Balser, P.C., et al.*
Case No. 1:11–CV–02995–AT

*CAMICO PRIVILEGE LOG*

*The T & B Defendants understand that CAMICO claims all the listed documents are protected.*

| No. | Bates Numbers | Date | Author | Description of Contents | Protection Claimed by T & B Defendants |
|---|---|---|---|---|---|
| 1 | CCS 017166 | 01–23–09 | CAMICO | Check No. 42928 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege |
| 2 | CCS 017117 | 02–26–09 | CAMICO | Check No. 43555 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege |
| 3 | CCS 017118 | 04–02–09 | CAMICO | Check No. 44277 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege |
| 4 | CCS 017119 | 07–23–09 | CAMICO | Check No. 45945 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege |
| 5 | CCS 017120 | 12–04–09 | CAMICO | Check No. 48067 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege |
| 6 | CCS 017121 | 12–30–09 | CAMICO | Check No. 48527 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege Produced inadvertently—Rule 502 |
| 7 | CCS 017122 | 04–22–10 | CAMICO | Check No. 50195 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege Produced inadvertently—Rule 502 |

| | | | | | |
|---|---|---|---|---|---|
| 8 | CCS 017123 | 07–15–10 | CAMICO | Check No. 51475 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege Produced inadvertently—Rule 502 |
| 9 | CCS 017124 | 11–11–10 | CAMICO | Check No. 53185 to Carlock, Copeland & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege Produced inadvertently—Rule 502 |
| 10 | CCS 017125 | 12–15–10 | CAMICO | Check No. 53654 to Carlock, Copelan d & Stair, LLP | Work product doctrine/in anticipation of litigation Common interest privilege Produced inadvertently—Rule 502 |
| 11 | CCS 017126–017132 | 05–12–08 | Mark Murovitz | E-mails to Joe Kingma and Steve Saunders transmitting Verso's 8–K | Work product doctrine/in anticipation of litigation Common interest privilege Attorney-client privilege |
| 12 | CCS 017133–017137 | 05–12–08 | Mark Murovitz | E-mails to Steve Saunders and Joe Kingma forwarding draft letter to former management on Laurus default and Falcon funding | Work product doctrine/in anticipation of litigation Common interest privilege Attorney-client privilege |
| 13 | CCS 017269–017275 | 05–12–08 | Steve Saunders | E-mail forwarding Verso's 8–K to Joe Kingma | Work product doctrine/in anticipation of litigation Common interest privilege |
| 14 | CCS 017138–017141 | 05–12–08 | Steve Saunders | E-mail to Joe Kingma forwarding draft letter to former management on Laurus default and Falcon funding | Work product doctrine/in anticipation of litigation Common interest privilege |
| 15 | CCS 017142–017216 | 05–12–08 | Steve Saunders | E-mail to Joe Kingma forwarding first day bankruptcy filings | Work product doctrine/in anticipation of litigation Common interest privilege |
| 16 | CCS 017216–017221 | 05–20–08 | Joe Kingma | E-mail to Steve Saunders and Mark Murovitz forwarding acknowledgement letter and representation letter to Murovitz | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |
| 17 | No Bates number | 05–22–08 | Joe Kingma | Letter to Steve Saunders (with copy to Mark Murovitz) providing Joe Kingma's legal analysis of discussions with John Moyle and Mark Murovitz on accounting issues | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege Communications with non-testifying consultants |
| 18 | CCS 017222–017223 CAM89–90 | 09–22–08 | Carlock Copeland | Invoice N o. 163316 to CAMICO | Work product doctrine/in anticipation of litigation Common interest privilege |
| 19 | CCS 017224–017231 | 02–05–09 | John Rogers | Update letter to Steve Saunders and Mark Murovitz | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |
| 20 | CCS 017232 | 02–05–09 | Steve Saunders | E-mail to John Rogers expressing thanks for update | Work product doctrine/in anticipation of litigation Common interest privilege |
| 21 | CCS 017233–017235 | 03–05–09 | John Rogers | Letter to Steve Saunder s and Mark Murovitz about producing workpapers | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |
| 22 | CCS 017236 | 03–05–09 | Steve Saunders | E-mail to John Rogers expressing thanks for update | Work product doctrine Common interest privilege |

| 23 | No Bates number | 03–19–09 | John Rogers | Letter to Mark Murovitz and Steve Saunders about production of subjective acceleration clause memo | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |
|---|---|---|---|---|---|
| 24 | CCS 017237 | 03–019–09 | Steve Saunders | E-mail to John Rogers expressing thanks for update | Work product doctrine/in anticipation of litigation Common interest privilege |
| 25 | No bates number | 05–13–09 | John Rogers | Letter to Mark Murovitz and Steve Saunders about filing of motion to compel document production | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |
| 26 | CCS 017238–017246 | 05–18–09 | John Rogers | E-mail to Steve Saunders about subpoena | Work product doctrine/in anticipation of litigation Common interest privilege |
| 27 | No Bates number | 08–17–09 | Lindsey Hettinger and John Rogers | Letter to Steve Saunders and Mark Murovitz about withdrawal of motion to compel document production | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |
| 28 | No Bates number | 08–26–09 | Joe Kingma and John Rogers | Letter to Steve Saunders and Mark Murovitz about liquidating trustee's threat to assert claims | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |
| 29 | CCS 017247 | 08–26–09 | Steve Saunders | Out of office reply | Work product doctrine/in anticipation of litigation Common interest privilege |
| 30 | CCS 017248–017249 | 09–02–09 | John Rogers | Email to and from Steve Saunders about retaining an accounting consultant | Work product doctrine/in anticipation of litigation Common interest privilege |
| 31 | CCS 017250–017251 CAM91–92 | 12–22–08 | Carlock Copeland | Invoice N o. 166608 to CAMICO | Work product doctrine/in anticipation of litigation Common interest privilege |
| 32 | CCS 017252–017253 CAM93–94 | 02–08–09 | Carlock Copeland | Invoice N o. 168758 to CAMICO | Work product doctrine/in anticipation of litigation Common interest privilege |
| 33 | CCS 017254–017256 CAM95–97 | 03–19–09 | Carlock Copeland | Invoice N o. 169872 to CAMICO | Work product doctrine/in anticipation of litigation Common interest privilege |
| 34 | CCS 017257–017263 CAM98–104 | 06–18–09 | Carlock Copeland | Invoice No. 173554 to CAMICO | Work product doctrine/in anticipation of litigation Common interest privilege |
| 35 | CCS 017264–017268 | 09–24–09 | Carlock Copeland | Invoice No. 179396 to CAMICO | Work product doctrine/in anticipation of litigation Common interest privilege |
| 36 | CCS 017276 | 05–18–09 | Steve Saunders | Out of office reply | Work product doctrine/in anticipation of litigation Common interest privilege |
| 37 | CCS 017277 | 06–05–09 | Steve Saunders | Out of office reply | Work product doctrine/in anticipation of litigation Common interest privilege |
| 38 | CCS 017278 | 05–20–09 | Steve Saunders | E-mail to John Rogers and Mark Murovitz expressing thanks for May 18, 2009 update | Work product doctrine/in anticipation of litigation Common interest privilege |

| 39 | No Bates number | 06–05–09 | Lindsey Hettinger | Letter to Steve Saunders and Mark Murovitz about motion to compel | Attorney-client privilege Work product doctrine/in anticipation of litigation Common interest privilege |